Thank you, Judge Sung, and may it please the Court, Ray Cardozo for Varian Medical Systems. In articulating the dividing line between what qualifies as a reasonable impression of bias that warrants vacata under the evident partiality statute and what does not qualify, this Court in the Sussex decision laid it out this way. In cases that involved direct financial connections between a party and an arbitrator or its law firm or concrete possibility of such connections, we have held it was evident partiality. By contrast, courts have rejected claims that undisclosed facts relating to long past attenuated or insubstantial connections between a party and arbitrator. And in looking at how this Court has applied those two diametrically imposed concepts, it should be very clear that in this Court's NOVA review, the vacata cannot meet the evident partiality standard for a couple of reasons. The first thing is the most important consideration, and it's right there in that quote, is a current financial incentive to either favor a party or disfavor a party, wholly absent in this. Every single case in the Ninth Circuit that we found that has approved a vacata has involved a current financial incentive. And I don't think we've located any in any circuit court or the U.S. Supreme Court that has not had that current financial incentive. Even more than that, in cases where there's the relationship is at least current in the Aposento-Gardens case, this Court has distinguished current relationships that do not have a financial incentive to favor a party. In this case, there is absolutely nothing on the evident partiality scale. Well, Rule 18 of the FAA rules requires the disclosure of any financial personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. So that would appear to include past representation and past relationships. Isn't that right? Yeah. The disclosure is required, but the standard for vacata is different. What you have to disclose under the AAA rules, the standard for vacata is what's in what's the Federal statute. Yes. But what we're talking about is a direct violation of this rule. Yeah. Which was not present, I don't think, in the Sussex case or other cases. Actually, it was, because that rule is very broad in the — it certainly was present in the Lagston case from this Court, in which the arbitrator was a member of the law firm that's representing a party, but the relationship was past. So there's no current incentive for the arbitrator. Under the AAA rules that you just said, absolutely needed to be disclosed. But the question for vacata is not whether it was required to be disclosed, because we very liberally encourage disclosures. This Court in both Lagston and Sussex said the fact that it would have been of some interest to a party does not make it vacata. We're looking for this. We assess the relationship more substantially. This is a point this Court should probably clarify in this opinion, because all of the disclosure rules that we want to encourage and the very different standard for vacata, it's not what I'm saying. No. If I understand your position, it is that the disclosure rules are significantly broader than the grounds on which to vacate an arbitration award that happens after such a failure to disclose. Correct. That's exactly — and you get that not only from the text of the statute, where you always start. Evident partiality is not what that disclosure rule is. That's much — It doesn't say failure to disclose anything. It doesn't speak to failure to disclose specifically. Yes. And, you know, the plain text wouldn't get you there. But also, what this Court, in all of the cases, both the ones that grant vacata and the ones that reverse, like Sussex and Langston, they focus on the nature of the relationship and whether it reaches a sufficient quantum, looking for, most especially, a direct financial interest. So are you saying that if there's not a direct financial interest, there's no consequence for a failure to disclose? No. Well, number one, it's a very bad day for the arbitrator, because all of this gets aired, and so on. So they're things short of vacata that are consequences. But number two, mistakes happen. This is a case where a mistake happened. What is our standard of review? Do we review de novo because there's no factual dispute here? Yes. Schmitz itself, New Regency, Langston, every one of these cases applied de novo review. And in this case, it's crystal clear, because the judge said the facts are undisputed, and actually didn't pass on issues like whether the arbitrator's actual knowledge or so on. But, and again, this case said it in Sussex and Langston, that there's a difference between disclosure and the vacata standard, but not as clearly as the other circuits. And this is the case to make that point clear, because we are going way out of the line of the evident partiality statute. If a mistake happens and it's a per se rule, it's automatic. That's not what the law is of this circuit. But it perhaps needs to be made clearer in this case. But think about what this court has said. Direct financial interest is sort of the touchstone. Long past, attenuated or insubstantial. And look at what we have here. For long past, the five years that had passed between this, this happens to be the exact same period of time as the arbitrator's relationship with the law firm in the Raymond James case, which, Your Honor, was on that panel. It severed the relationship five years. The arbitrator's no longer at that law firm. This is an even more tenuous relationship, because the, that relationship is the exact same as Schmitt's. If it had been a current relationship, that arbitrator would have to be disqualified, but because five years had passed, it didn't. This, the lawyer, the arbitrator was the client, not the lawyer, which is even less, because the client doesn't have to curry favor with the lawyer. The lawyer has to curry favor with the client. Attenuated. This is attenuated in two different ways. The relationship is not with a party, which is the most powerful disqualifying relationship. It's with a lawyer. It's not an irrelevant relationship, but it's somewhat attenuated. And even when the relationship was current, their contact was indirect. She was on the pleadings, but she worked on motions they never spoke. Well, motions are important these days, but the other, the other attorney did disclose, and am I correct that the arbitrage the triple-A under its procedures was supposed to inform everyone of that disclosure? Yes. The relevant page is, except for Record 403, that is the triple-A rule. And here's what it says. Number one, it tells, it told Ms. Ta that she had to disclose any relationship. So it's broader than the evident partiality statute. That's what she did. And the last line of it says that a disclosure doesn't mean it's likely to affect. We just want much broader disclosure. But then it says, you shall disclose to the triple-A. That's what the lawyer is supposed to do. And then it says, the triple-A shall communicate the information to the parties. Right. So — And it didn't do that. Yes. The triple-A didn't do that. Didn't. Okay. But, you see, that's a — another factor. When you go down the scale, every factor in this case weighs against Vacater. Because in all of the cases that have involved Vacater, the party who was opposing Vacater had a duty to disclose and didn't. In this case, the district court explicitly found Varian did all it should have done. And it's losing its arbitration award because of something a service provider does. And it's got no remedy for that. Which — one last comment on the — just on the waiver issue, and then I'll reserve the rest of my time for rebuttal. In a situation like this, this Court in Monster Energy and other cases has applied a constructive knowledge standard on waiver. In a situation like this, when one party makes the correct disclosure and the information upon which the challenge is made is available from a simple Google search that's in the public domain, there's a very narrow waiver holding here that's — as long as it doesn't have actual bias or real conflict, the party discloses it. The other party could have found the information out. As between those parties, the party with constructive knowledge bears the loss. And this Court not only established the constructive knowledge standard in Monster Energy, but in the Peraton case, this Court found a waiver based on constructive knowledge because the relationship was available in the public domain. Kagan. Well, the constructive knowledge is because this is available in the public domain? Yeah. It's all public record. It was a simple Google search done only after they lose. It could have been done before, which is just what you had in the Peraton case. The list, the connection was right there in the public domain. And this Court, applying its public constructive knowledge standard, found a waiver. And again, it's — it can be a very narrow holding in this case. It's only when all three elements are present. The party opposing, Vacater, made the correct disclosure. On that issue, you seem to concede that AAA had an obligation — mandatory obligation to transfer the information of the disclosure to the parties. Do you know what form that notice would normally take? I don't know. I think it's just an informal communication. They would pass it on like — they would probably just pass on what variance submitted. I guess I ask in part because I'm trying to figure out if Varian was on notice that AAA didn't pass on that information. Not really, because that rule says AAA shall disclose. And the record does show — The parties. Right. So it's assumed if there was — So it's assumed they wouldn't. And you also have in the record, as soon as Equicare raised this, Varian immediately contacted AAA and said, send them the file, show them where you sent it to them. Varian didn't know. I mean, it is just assumed. And their prompt action right away asking AAA, we disclosed this, where's your — go through the file and find where you sent it. So it followed the AAA rule on disclosure. But the arbitrator didn't disclose it, and Varian was aware of that. It never noticed that, because it had made the disclosure, it assumes it's communicated, and it's pretty insubstantial. So it didn't think twice about it again. That's the last piece of it. We always look for the substantiality of the relationship. You can't have a waiver if it's an actual conflict. I mean, it seems then to turn on whether that — how you characterize this. Right. But how this court is characterized substantial is a current financial incentive, because a lawyer can sue their former client if there's no substantial relationship. Once the relationship ends, there's no — VR cases are saying that's certainly sufficient. What I don't see is something clearly stating that's required. I — what's — Certainly, it's a current financial interest is sufficient to show evident partiality. What I don't see is something saying without that, you just can't meet the standard. Remember what it said — In our circuit. Remember what it said. It doesn't qualify long past, attenuated, or insubstantial. And substantial is based upon the incentive to favor a party. So in this case, you have all three. It's long — it's or. Long past, attenuated, or insubstantial. But in this case, you have all three. So that's what this circuit has clearly said doesn't qualify. And in Raymond James, a relationship that would have been sufficient for disqualification was the relationship at Smits. But because the relationship had ended, that didn't qualify. So this circuit's authority, I think, pretty clearly is contrary to this ruling. What's your best case for the proposition that substantial, by definition, means a current financial interest? I would just give you all three. Sussex, Lagstein, and Raymond James. They all — they all, in analyzing the relationship, that's what they're talking about. Sussex says directly it distinguishes a financial interest from what we're talking about here. Okay. I'll give you time for rebuttal. Thank you, Your Honor. May it please the Court, Charles Talpas on behalf of Equicare. Varian's lead counsel during the arbitration was Quinn Ta. And Ms. Ta disclosed to the AAA, as you heard, her prior attorney-client relationship with arbitrator Dosker because she believed it was required in order to comply with AAA Rule 17. So what? Isn't there a different standard for vacatur? Well, if I could read AAA Rule 17 standard, I think it is identical to the standard enunciated in Commonwealth codings. Seriously? I mean, what that means is that any time there's a failure to disclose, let's suppose it was 15 years ago and it was, you know, something completely unrelated and there's no disclosure. And the losing party to the arbitration gets to undo the whole thing, in your view? So I think if the That's a yes or no question, sir. I would say yes if it meets the Commonwealth codings obligation to disclose. So you're saying that all our cases requiring something that is not insubstantial are wrong? And if they are, I mean, what could a three-judge panel do about it? Well, if it is, if it's a relationship that might create an impression of possible bias, it is sufficient to warrant vacatur. Now, Well, that begs the question because it seems to me that this relationship, such as it was, was not only long past, but was trivial, really. I mean, these people didn't even remember each other and they had almost no contact. Whatever had happened was long ago, and there certainly is no current financial interest. Sure, let me address that point then. So the long past attenuated insubstantial line of cases, Lagstein, Sussex, and Raymond James. So first of all, this is not Lagstein, and I think the distinction is critical. Lagstein, as you recall, involved a judge who was an arbitrator, and the judge failed to disclose some decades-old ethics controversy from the bench. And that controversy had nothing to do with one party or the other, nor the party's lawyers or the other. It was just simply, you know, you're kind of a bad arbitrator because of this ethics scandal. And what the court said in Lagstein is, no, it has to show that the arbitrator might be partial to one side, not just... It still has to show that. I mean, there are things that are trivial enough that it's kind of a so what, because they don't really demonstrate something that a reasonable person would consider to create bias. I mean, if, you know, let's suppose people were on a softball team together, you know, last year. Maybe, maybe not, but it just seems to me that what you're saying is that anything that should have been disclosed that wasn't disclosed gives the losing party an out. And I don't think that's what the statute means. I don't think it's anything that — and I don't know what should have been disclosed means unless you tie it to the Commonwealth Coding's duty to disclose. And Rule 17 under AAA requires you to disclose it if you think it would give rise to a justifiable doubt about the arbitrator's partiality. Is there any case that you're aware of in our circuit that says that every failure to disclose under the AAA rules equates to the opportunity to undo an arbitration award? Well, so not in and of themselves, but many of the cases do say that it's a very persuasive authority what the disclosure obligations are, because I think it gets to an objective concept of, you know, what would reasonably give rise to doubts about partiality. But here where you have Berrien's attorney saying this information gives rise justifiable doubts about the arbitrator's partiality, I don't think they can undo that and say, no, now that information doesn't give rise to justifiable doubts. What is your view of our standard of review? So I think that it is de novo except for any factual findings that — There's no real dispute about the facts here, is there? Well, I think the — There's a dispute about what they mean, but what actually occurred, what the relationship was, when it was, and so forth, as I understand it, there's no dispute. Is that true? You know, I think as to the evident partiality question itself, no, I think that the — Judge D'Avola decided it based on undisputed facts. Okay, that's what I was — If you're going to talk about the waiver question, I think that there isn't even a factual record, so I don't want to say that there are undisputed facts as to that question. But if you're talking strictly about the evident partiality question — Is it clear from the record that there was no independent inquiry made by your client until after the arbitration was lost? No. There's nothing about what our client did prior to when we lost in terms of investigating or looking into any of the arbitrators, and there's really nothing about what we did after. All there is is the fact that it was discovered after, and that the factual information that was discovered is, you know, on the Internet, but so are a lot of things. But that is the entire factual record as to the waiver issue. Can you tell me what was on the Internet? What was on the Internet? Yeah. There were essentially captioned pages of the e-pass litigation, which is the underlying malpractice lawsuit where Ms. Ta represented arbitrator Dosker individually. And so on the captioned pages, you see, you know, Quinn Ta, attorney for Mark Dosker and Squire Sander Boggs. So to get that, pull that up, what would you search for? Well, and there is no factual record on that, which I think is important for why it matters that that argument wasn't raised at the district court level. So I'm not sure what I'm allowed to say. There may be a forfeiture of waiver. Yes, correct. There's a forfeiture of the waiver. Exactly, exactly. I just want to be sure I understood your answer to Judge Schroeder. Basically, you would input the two names or one of the names and see what came up, presumably. Your Honor, I have no idea. There is no factual record. I'm not saying what they did do, but I'm saying just generally the search would have to include one or both names, presumably. I think I would be speculating, Your Honor, to answer that question. Right, there just is no facts about how it was found. You could guess how it could be found, but I think sitting here today, we have no idea, you know. And so, yeah, I don't want to get into too much about a factual record that frankly just doesn't exist. And that's not a straightforward question of law when we don't know how the information was found or what should have triggered them to find it. And that's getting back to why I think that the argument should have been made below if they're going to raise it now. If I could return to the point about Lagsteen, Sussex, and Raymond James. You know, Lagsteen, the key distinction there is this is a direct individual attorney-client relationship between the arbitrator and the attorney for a party to the arbitration. That is miles away from an ethics controversy that had nothing to do with either party and gave no reason why the arbitrator there would favor one party over the other. It was just that he was a corrupt judge. And I think the Court in Lagsteen said the arbitrators here discharged their duties to disclose by disclosing all relationships with the parties, the parties' attorneys, and the parties' attorneys' law firms. Clearly, that didn't happen here. And I think the implication of Lagsteen was if there was a relationship that wasn't disclosed about a party's attorney, then that would support vacature. That would be something that the arbitrator would have a duty to disclose. Or, you know, even simpler, if AAA had the information in their hands because it was given to them. Well, apparently they did. And I guess that's another question I have. In view of the fact that the fault, if there is fault here, lies with AAA and not with the opposing party, is there recourse against AAA in some manner as distinct from undoing the arbitration? Recourse by this Court or by the district court? No, just in general. I think in general, in the abstract, yes. You know, I think a party would be quite irritated if they went through this arbitration and the expense of the arbitration and it was undone because the fault lied with AAA. Well, I guess I question whether even opposing counsel's actions and AAA's actions are relevant when all of our case law turns on the arbitrator's duty to investigate. Now, we have held that there's no general duty to investigate, and it seems to have been just largely undisputed that in this case, the arbitrator had a duty to investigate. And so that seems now to have been conceded. And then that he violated his duty to investigate by not actually looking for his own conflicts. So, I mean, I think sort of regardless of what counsel did, the arbitrator had an independent duty to investigate, didn't, and that's why he didn't find and disclose the conflict. So under our case law, it seems that is the real problem, as far as I can tell. Correct. And I would point out that just like the arbitrator in Schmitz, the arbitrator here said, if I had adequately investigated, I would have disclosed. Key similarity with Schmitz, also in New Regency, I would point out, you know, they have looked to things that the arbitrator said is substantial enough to require disclosure to inform the question of whether he had a duty to disclose that information. And that's sort of analogous to comparing Ms. Taw's disclosure here. But your question was, isn't it the arbitrator's disclosure that matters, not AAA's or the party's conduct? A hundred percent, it is not the party's conduct. The FAA is not about punishing good or bad parties here, under Section 10A at least. However, I will point out that there are two cases Judge Davila cited which say, if the only problem here was AAA didn't transmit the disclosures from the arbitrator to the parties, that requires vacature. They say that's no simple mistake that goes to the very heart of the integrity of the arbitrator selection process, and Varian has never addressed those cases whatsoever. I still have, though, in New Regency where we say, you know, even where there's a violation of the duty to investigate and the duty to disclose on the part of the arbitrator, we're still not going to vacate unless the information that wasn't disclosed or the conflict that wasn't disclosed was real and not trivial. And I think, as far as I can tell, we're somewhere in the middle of all our precedent, right? There's all the cases where there's a financial interest. We're not there. There's all the cases where there's really no relationship to any of the parties and no financial interest. And we're, I think, somewhere in the middle because, although there's not a financial interest, there is a relationship to at least counsel for one of the parties. And I don't see any of our precedent addressing that scenario. That's, I think, a very fair synopsis of the landscape, like a very fair survey of what is out there. I will push back to an extent on the notion that a financial interest is the end-all, be-all in terms of the farthest end of the spectrum. Right? A lot of these cases— I mean, I see our cases saying no connection to either party or a financial interest. So, arguably, one or the other could suffice. Could suffice, exactly. And, you know, I think Commonwealth Codings, there was some consulting work done for $12,000. That is a financial pecuniary interest. I don't think that it's any more powerful than a malpractice lawsuit, which this arbitrator cared a lot about. And he was successfully defended by the attorney, Ms. Ta. Got a good result from him. Did all the briefing. And, you know, anyone in Equicare's shoes is not going to want Arbitrator Dosker overseeing a case where Ms. Ta is the lawyer in that situation. I mean, think about it this way. The attorney who sued Arbitrator Dosker for malpractice representing his former client, if that guy's in an independent arbitration five years later and he sees Arbitrator Dosker on the rank and strike list, obviously, he's going to strike him right off the bat without a second thought. So the gravity of this, I think, is not trivial or insubstantial. I think it's direct. And, you know, for that reason, I think it falls squarely under Commonwealth Codings. Thank you, counsel. A minute for rebuttal, please. Thank you, Your Honor. Starting with Justice Graber's question, not only is, as Your Honor pointed out with the new Regency case, clearly the law of the circuit that more than the nondisclosure, you have to assess the substantiality of the relationship. But there has never been a case that has approved Alcatraz, not just in this circuit, but in any circuit that did not have a current financial relationship or at least a current relationship. And we know from the Raymond James case, the very conflict that warranted disvocateur in Schmitz, once the relationship is severed, that moves it from the substantial to the insubstantial category, because once the relationship is severed, it's a different story altogether. But no court has ever actually said that, that a past relationship is not good enough. It was an unpublished memorandum, but this court said that in Raymond James. They said that precisely. And it was five years. It happened to be five years. So, fairly, it's in between what this circuit has dealt with. But when we think about how we resolve a question like that, maybe we don't place too much stock in an unpublished memorandum, but it said that. And then we look at every single circuit that's looked at comparable questions. They've all said, once the relationship is severed, and that the touchstone is current financial incentives. I'll just quote you, Judge Posner, if you want to look at the circuit, one of many. We have to look to whether a relationship was so intimate, personally, socially, professionally, or financially, as to cast serious doubt on Clifford's impartiality. That's got to be the correct standard, because that mirrors the evident partiality text. And so, yes, it doesn't have to be a financial interest. But was it — but if it's not, was it so intimate personally, socially, or professionally? A five-year-old attorney-client relationship that's been severed, that's not intimate at all. Especially when it was never intimate at the time of the relationship. She was — never had contact with the person directly. It was a big piece of litigation. It was one of multiple clients. With that, I'll submit, Your Honor. Thank you, counsel, for your helpful arguments. This matter is submitted.
judges: SCHROEDER, GRABER, SUNG